UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| NICK MATHIS, | : |
|     Plaintiff, | :    Civil Action No. 3:03 CV 771 (CFD) |
| | : |
| v. | : |
| | : |
| DAVID EISNER, CHIEF EXECUTIVE OFFICER, CORPORATION FOR NATIONAL AND COMMUNITY SERVICE, | : |
|     Defendant. | : |

**RULING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

*Pro se* plaintiff Nick Mathis ("Mathis") brought this action against her former employer, the Corporation for National and Community Service ("CNCS" or "the Corporation"), a wholly owned federal corporation[1], for race, gender, national origin, color, and age discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"); 42 U.S.C. §§ 2000e et seq.; and the Age Discrimination in Employment Act ("ADEA"); 429 U.S.C. §§ 621 et seq.[2] The defendants have moved for summary judgment.

---

[1] 5 U.S.C. § 103 authorizes the creation of such federal corporations. CNCS is the corporate successor to the national "VISTA" and "ACTION" programs. See http://www.nationalservice.org.

[2] Mathis originally filed her claims in two separate actions (Civ. No. 3:03 CV 771 (CFD) (the "2003 complaint"); Civ. No. 3:04 CV 1487 (CFD) (the "2004 complaint")) which were consolidated by this Court in January, 2007. The defendants named in the 2003 complaint were CNCS, Leslie Lenkowsky (former Chief Executive Officer of CNCS), and Romero Cherry (Mathis' former supervisor). The second complaint named David Eisner, the Chief Executive Officer of CNCS, as the only defendant. These defendants will be referred to collectively for purposes of this motion, and this ruling applies to all defendants in both cases. Mathis was initially represented by counsel, but since February 8, 2005 has been proceeding *pro se*.

**I.     Background**[3]

From 1977 through April 2001, Mathis was employed as a State Program Specialist at CNCS's Connecticut State Office in Hartford, Connecticut, part of the "Atlantic Cluster" of CNCS offices. She was terminated on April 17, 2001.

In her 2003 complaint, Mathis alleged that from December 1996 through her termination she "suffered many forms of abusive treatment from" her former supervisor, State Program Director Romero Cherry, and from the only other employee in the office, State Program Assistant Marilyn Drew. In addition, in her 2004 complaint, Mathis alleges that "from December 1977 through April 2001," she was "subjected to disparate treatment, and suffered many abusive acts [and was] forced to work in a hostile work environment."

The alleged incidents which form the basis for her hostile work environment claim are: (1) Cherry clenched his fists; (2) Cherry pounded his fists; (3) Cherry used a threatening voice; (4) Cherry engaged in condescending mannerisms; (5) Cherry made conflicting appointments for Mathis; (6) Cherry micro-managed Mathis' work; (7) Cherry touched Mathis; (8) Cherry threw a telephone where Mathis was standing; (9) Cherry said he "liked to argue with women;" and (10) Cherry referred to Mathis as a "dead bird." However, there is no genuine issue of material fact that each one of these incidents occurred more than forty-five days before Mathis made initial contact with a CNCS EEO Counselor on September 1, 1997 regarding her first suspension, as discussed below. In addition, Mathis did not file an administrative EEO complaint alleging a hostile work environment and exhausting that claim.

---

[3]The facts are taken from the parties' Local Rule 56(a) statements, summary judgment briefs, and other evidence submitted by the parties. They are undisputed unless otherwise indicated.

Mathis also challenges four instances of discipline: three suspensions (September 1997, April 1998, and November 1998) and her termination in April 2001. She claims that these instances of discipline were discriminatory based on her race, color, age, sex, age, and in reprisal for her use of the agency discrimination complaint process.[4] Each of these suspensions was the subject of administrative claims brought by Mathis.

On June 30, 1997, Cherry proposed Mathis' two-day suspension for insubordinate conduct. Mathis was charged with: (1) failure to turn in weekly schedules despite repeated requests; (2) failure to supply requested budget information regarding a Corporation grantee; (3) failure to provide a requested analysis of assigned Corporation programs; (4) failure to develop a schedule for grantee monitoring visits for the first and second quarters of 1997; (5) failure to reorganize and maintain a professional work environment by keeping a clutter-free and organized work-area. The "deciding official," Malcolm Coles, Area Manager for the CNCS "Atlantic Cluster" and Mathis' second level supervisor, considered Cherry's proposed suspension and Mathis' response and upheld the two day suspension.

On March 3, 1998, Cherry proposed Mathis' three-day suspension for additional insubordinate conduct, namely her failure to certify and timely submit an annual attendance record as requested. The deciding official, Coles, again considered Mathis' response and upheld the three day suspension.

On September 18, 1998, Cherry proposed Mathis' fourteen-day suspension for further insubordinate conduct and absence without leave. Mathis was charged with: (1) conducting a

---

[4]Mathis did not allege each basis for discrimination as to each incidence of discipline. However, the Court will consider each possible basis as to each.

monitoring visit to a Corporation grantee in violation of Cherry's prohibition on doing so; (2) hanging up on Cherry's calls to the grantee multiple times during the monitoring visit; (3) failing to return to the office in the remaining work hours following the monitoring visit; and (4) failing to provide Cherry with a written explanation of her conduct on the day of the monitoring visit. Again, Coles considered Mathis' response and upheld the fourteen-day suspension.

Finally, on January 26, 2001, Cherry proposed Mathis' termination from employment, citing her for the following continued insubordinate conduct: (1) failing to conduct three scheduled site visits in a one-month period; (2) failing to notify the grantees' staff that she could not keep her scheduled on-site monitoring visit; (3) failing to discuss office business with Cherry, including her failure to conduct the three monitoring visits. Coles upheld Mathis' termination, after considering her arguments, effective April 17, 2001.

## II.    Legal Standard for Summary Judgment

In a summary judgment motion, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). A court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 5(c)); accord Miner v. Glen Falls, 999 F.2d 655, 661 (2d Cir. 1993). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

Where, as in this case, the nonmoving party has the burden of proof at trial, the moving

party need only demonstrate that there is a lack of evidence to support the nonmovant's claim. Celotex, 477 U.S. at 323-25; Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 95 (2d Cir. 1998). Once the movant has established a prima facie case demonstrating the lack of a genuine issue of material fact, the nonmoving party must provide enough evidence to support a jury verdict in its favor. Anderson, 477 U.S. at 248; Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991). A plaintiff may not rely on conclusory statements or mere contentions that the evidence in support of summary judgment is not credible. Ying Jing Gan v. City of New York, 996 F.2d 522, 532 (2d Cir. 1993). Similarly, a plaintiff, as the nonmovant, may not rest "upon the mere allegations or denials" in its complaint to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(e). Therefore, after discovery, if the nonmoving party "has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof," then summary judgment is appropriate. Celotex, 477 U.S. at 323. When addressing a motion for summary judgment, the Court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir. 1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Maffucci, 923 F.2d at 982.

Since Mathis is now proceeding *pro se*, the Court must apply "less stringent standards" to her submissions than to "formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 520 (1972). The Court will also "interpret [her papers] to raise the strongest arguments that they suggest." Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). It is well-settled in this Circuit that "a *pro se* litigant should be afforded every opportunity to demonstrate that he [or she] has a

valid claim." Bobal v. Rensselaer Polytechnic Inst., 916 F.2d 759, 762 (2d Cir. 1990) (citation omitted). At the same time, however, "[p]roceeding *pro se* does not otherwise relieve a litigant of the usual requirements of summary judgment, and a *pro se* party's bald assertions, unsupported by evidence, are insufficient to overcome a motion for summary judgment." Rodriguez v. Hahn, 209 F. Supp. 2d 344, 348 (S.D.N.Y. 2002); see Jones v. W. Suffolk Boces, No. CV-03-3252, 2008 WL 495498, at *3 (E.D.N.Y. Feb. 20, 2008) ("[A] plaintiff's *pro se* status does not allow [her] to rely on conclusory allegations or unsubstantiated speculation to overcome a motion for summary judgment.").

## III.   Discussion

Title VII requires that an employment discrimination claimant pursue administrative procedures before commencing a lawsuit and imposes a deadline for the initiation of such procedures. See generally 42 U.S.C. § 2000e-16; Fitzgerald v. Henderson, 251 F.3d 345, 358-59 (2d Cir. 2001). A federal employee must initiate administrative review by contacting an EEO Counselor at her agency within forty-five days of the date on which the alleged discriminatory act occurred. 42 U.S.C. § 2000e-16; 29 C.F.R. § 1614.105. After participating in counseling or, if available, alternative dispute resolution (see 29 C.F.R. § 1614.105(b)(2)), the employee may then file a complaint with her agency, which must conduct an investigation of the complaint (or dismiss it, see 29 C.F.R. § 1614.107). See 29 C.F.R. § 1614.105(b)(1). If the complaint does not contain any issues that must be appealed to the Merit Systems Protection Board (MSPB)[5], the

---

[5]Some employment actions which may be the subject of a discrimination complaint under Part 1614 may also be appealed to the Merit Systems Protection Board (MSPB). In such cases, the employee must elect to proceed with a complaint as a "mixed case complaint" under Part 1614, or a "mixed case appeal" before the MSPB. Mixed case complaints are processed similarly to other complaints of discrimination, with the following notable exceptions: (1) the agency has

complainant may request a hearing before an EEOC administrative judge or an immediate final decision from the agency.  Within 30 days after final action on the complaint, a dissatisfied complainant may file an administrative appeal to the EEOC.  Civil actions may be filed in an appropriate federal court: (1) within 90 days of receipt of the final action where no administrative appeal has been filed; (2) after 180 days from the date of filing a complaint if an administrative appeal has not been filed and final action has not been taken; (3) within 90 days of receipt of EEOC's final decision on an appeal; or (4) after 180 days from the filing of an appeal with EEOC if there has been no final decision by the EEOC. 29 C.F.R. § 1614.408.  See generally "Federal EEO Complaint Processing Procedures," http://www.eeoc.gov/federal/fedprocess.html.

### A.     Disparate Treatment Discrimination

"A plaintiff may establish a claim of disparate treatment under Title VII either (1) by showing that he has suffered an adverse job action under circumstances giving rise to an inference of discrimination on the basis of race, color, religion, sex, or national origin, or (2) by demonstrating that harassment on one or more of these bases amounted to a hostile work environment." Feingold v. New York, 366 F.3d 138, 149 (2d Cir. 2004), (citing Raniola v.

---

only 120 days from the date of the filing of the mixed case complaint to issue a final decision, and the complainant may appeal the matter to the MSPB or file a civil action any time thereafter; (2) the complainant must appeal the agency's decision to the MSPB, not the EEOC, within 30 days of receipt of the agency's decision; (3) at the completion of the investigation the complainant does not have the right to request a hearing before an EEOC AJ, and the agency must issue a decision within 45 days. 29 C.F.R. § 1614.302(d).  Individuals who wish to file a civil action in mixed-case matters must file within 30 days of receipt of: (1) the agency's final decision; (2) the MSPB's final decision; or (3) the EEOC's decision on a petition to review. Alternatively, a civil action may be filed after 120 days from the date of filing the mixed case complaint with the agency or the mixed case appeal with the MSPB if there has been no final decision on the complaint or appeal, or 180 days after filing a petition to review with EEOC if there has been no decision by EEOC on the petition. 29 C.F.R. § 1614.310.

Bratton, 243 F.3d 610, 617 (2d Cir. 2001)). Under either theory, liability in a disparate-treatment case "depends on whether the protected trait ... actually motivated the employer's decision." Raytheon Co. v. Hernandez, 540 U.S. 44, 52, 124 S.Ct. 513, 519 (2003).

    **1.  Hostile Work Environment Claim**

The forty-five-day deadline for initiating administrative review with the EEOC serves as a statute of limitations; thus claims alleging conduct that occurred more than forty-five days prior to the employee's initiation of administrative review are time-barred. See, e.g., Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393 (1982); Downey v. Runyon, 160 F.3d 139, 145-146 (2d Cir. 1998). A hostile work environment claim is composed of a series of separate acts that collectively constitute one "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1); National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 117 (2002). The timely filing provision only requires that a Title VII plaintiff file a charge within forty-five days after the unlawful practice happened. It does not matter that some of the component acts of the hostile work environment fall outside the statutory time period. National R.R. Passenger Corp. v. Morgan, 536 U.S. at 117. If an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability. Id. Here, there is no genuine issue of material fact whether the alleged events that form the basis of Mathis' hostile work environment claim occurred within forty-five days of her initial contact with an EEO counselor on September 1, 1997.[6] Mathis has not specified when any

---

[6]The Court notes that this initial EEO action was solely in relation to Mathis' first suspension. The EEO complaint does not mention any of the incidents that are the basis of the hostile work environment claim before the court. Thus, it is questionable whether Mathis even attempted to exhaust her administrative remedies for this claim, which is a prerequisite to this Court's consideration of the claim. See Butts v. City of N.Y. Dep't of Housing, 990 F.2d 1397,

of the events occurred, and the defendants presented evidence establishing that each alleged incident occurred prior to - and in most cases many years before - July 18, 1997.[7] Thus, Mathis' hostile work environment claim is time-barred.

### 2. Adverse Employment Action Claim

To establish a prima facie discriminatory treatment case based on an adverse employment action a plaintiff must show "1) that [s]he belonged to a protected class; 2) that [s]he was qualified for the position [s]he held; 3) that [s]he suffered an adverse employment action; and 4) that the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." Feingold v. New York, 366 F.3d at 152 (citing Collins v. New York City Transit Auth., 305 F.3d 113, 118 (2d Cir. 2002)). "An 'adverse employment action' is one which is 'more disruptive than a mere inconvenience or an alteration of job responsibilities.'" Id. (quoting Galabya v. New York City Bd. of Educ., 202 F.3d 636, 640 (2d Cir.2000)). Once a plaintiff has established a prima facie case, the defendant must then articulate a legitimate reason

---

1401 (2d Cir. 1991) (superceded on other grounds). However, even assuming that the conduct complained of would have fallen within the "scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination" and could thus still be considered even though not presented to the EEOC, the hostile work environment claim is still time-barred. Terry v. Ashcroft, 336 F.3d 128, 151 (2d Cir. 2003)

[7]In her brief in opposition to summary judgment, Mathis asserts, contrary to the sworn testimony she gave at her deposition, that the incident in which Cherry allegedly used a threatening voice occurred when she was working on the 21st floor. CNCS moved to the 21st floor in June 2000. However, at her deposition, Mathis testified that the incident occurred when she worked on the "fifth floor," which was prior to June 1990. "[I]t is well settled in this circuit that a party's affidavit which contradicts his own prior deposition testimony should be disregarded on a motion for summary judgment." Hale v. Mann; 219 F.3d 61, 74 (2d Cir. 2000); quoting Mack v. United States, 814 F.2d 120, 124 (2d Cir. 1987). Thus, the Court disregards the new assertions in Mathis' unsworn brief.

for the adverse employment action. See Graham v. Long Island R.R., 230 F.3d 34, 38 (2d Cir. 2000). Once a defendant does so, the plaintiff must show that the proffered reason is pretextual, and that the real reason for the discharge was discrimination.[8] See id.

"Examples of materially adverse employment actions include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices unique to a particular situation." Feingold v. New York, 366 F.3d at 152 (internal quotation marks and alterations omitted).

Mathis has established that she belonged to a protected class and was qualified for the position she held. Mathis suffered adverse job actions when she was suspended three times and eventually terminated from employment at CNCS.[9] However, while "[t]he burden of establishing a prima facie case is not a heavy one;" Carlton v. Mystic Transp., Inc., 202 F.3d 129, 134 (2d Cir.2000); Mathis has not presented evidence tending to suggest that the alleged adverse employment actions "occurred under circumstances giving rise to an inference of discriminatory intent."

Mathis maintains that discriminatory animus can be inferred from the fact that Cherry and CNCS treated Marilyn Drew more favorably than Mathis. While Mathis is correct that more favorable treatment of a similarly-situated coworker outside of her protected group by a

---

[8] This burden-shifting framework applies to discrimination cases under the ADEA as well as Title VII. Holtz v. Rockefeller & Co., Inc.; 258 F.3d 62, 76-77 (2d Cir. 2001).

[9] Mathis also claims she was subject to disparate treatment by Cherry because he made conflicting appointments for her and "micro-managed" her work. However, these are not adverse employment actions.

supervisor will frequently support a prima facie case of race discrimination; see Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000); she has not identified any similarly situated coworkers. A plaintiff relying on disparate treatment evidence "must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself." Id. Whether comparators are similarly situated for Title VII purposes "requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases." Id. at 40 (2d Cir. 2000) (citing Conward v. Cambridge Sch. Comm., 171 F.3d 12, 20 (1st Cir.1999) (explaining that "[r]easonableness is the touchstone" and recognizing that "the plaintiff's case and the comparison cases ... need not be perfect replicas")). Relevant factors include "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." Graham v. Long Island R.R., 230 F.3d at 40.

Drew and Mathis did not have the same job title or responsibilities. Drew was a support staffer whose role was to assist and support the professionals in the office. Mathis, on the other hand, was a non-management State Program Specialist, whose responsibilities were more akin to those in professional job categories. Thus, their job descriptions were entirely different and they were not subject to the same workplace standards. In addition, there is no evidence that Drew engaged in any comparable insubordinate conduct, even within performance of these different job responsibilities, and was treated differently on that basis.[10]

---

[10]Mathis alleges Drew also did not keep a neat work area. However, she presents no evidence to support this proposition. In addition, the condition of Mathis' work area was one of several different bases for her suspension.

Insofar as Mathis alleges that the only other employee in the Hartford office, Cherry, was treated differently, he is also not an adequate comparator. Cherry was Mathis' supervisor, the

Even if Malcolm Coles, the head of the Atlantic Cluster, is considered the plaintiff's supervisor, there is still no other State Program Specialist in Coles' line of supervision (which included the Connecticut office and eight other field offices) similarly situated to the plaintiff.

It is undisputed that no other employee in the Atlantic Cluster engaged in the same or similar conduct as that Mathis engaged in and for which she was disciplined and eventually terminated. Def.'s Ex. 24. According to Coles, no employee in the Atlantic Cluster, State Program Specialist or otherwise, engaged in the same or similar conduct to that of Mathis. Nor was any employee proposed for or subject to any disciplinary action during the relevant period.

Thus, Mathis cannot carry her burden and establish a prima facie case of race, color, sex, or age discrimination in her suspensions or removal through showing she was treated differently than a similarly-situated employee. In addition, Mathis has not and cannot utilize any other potential method of presenting a prima facie case, such as "the employer's continuing, after discharging the plaintiff, to seek applicants from persons of the plaintiff's qualifications to fill that position; or the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge, or the timing of the discharge." Chambers v. TRM Copy Centers Corp.; 43 F.3d 29, 37 (2d Cir. 1994) (internal citations omitted). Following Mathis' discharge, Cherry assumed her job responsibilities. Furthermore, there is no evidence in the record that Cherry or

---

State Program Director, and the head of the Hartford office, and thus he occupied a different position than Mathis and was also not subject to the same workplace standards. As with Drew, there is no evidence of undisciplined insubordinate conduct on the part of Cherry.

anyone else at CNCS ever criticized the plaintiff's performance in ethnically or sexually degrading terms, made invidious comments about others, or of anything in the sequence of events leading up to Mathis' discharge other than a pattern of insubordination and subsequent discipline.

Furthermore, even if the plaintiff could make out a prima facie case, the record is entirely devoid of any evidence tending to show that the employer's reasons for taking the adverse employment actions were a mere pretext, and that actions were truly taken because of discriminatory animus toward the plaintiff on any of the bases she alleged.[11] To show pretext, a plaintiff must demonstrate that: (1) the employer's proffered explanation for its decision is not true; and (2) the deception is a subterfuge, or cover, for discrimination or retaliation for having been the real motivation. Reeves v. Sanderson Plumbing Prod., 530 U.S. 133, 144-46 (2000).

The plaintiff does not dispute the general factual basis for any instances of discipline.[12] Her rebuttals to Coles as well as deposition testimony show there is no genuine issue of material fact regarding CNCS's reasons for imposing any of the discipline. Mathis has not presented any evidence that CNCS's proffered reasons for its disciplinary decisions were not true. Thus, summary judgment is granted for the defendants on Mathis' claims of both hostile work environment and adverse job actions.

---

[11] Mathis also appears to argue that the suspensions were part of her claim of a hostile work environment. However, for the reasons discussed here, there is no evidence the discipline was motivated by illegal animus.

[12] For her fourteen-day suspension, the plaintiff did assert at her deposition that the unauthorized site visit was in fact authorized. However, she never asserted this in any of her responses to Coles, nor did she explain in writing this assertion as an explanation for her conduct when asked to do so by Cherry. Furthermore, she does not dispute that Cherry, her supervisor, told her the visits were not authorized, she merely asserts she did not need her supervisor's permission to conduct visits. Thus, there is no genuine issue of material fact as to whether this site visit was authorized.

### B. Retaliation Claim

To establish a prima facie case of retaliation, a plaintiff must show that "(1) she was engaged in an activity protected under Title VII; (2) the employer was aware of plaintiff's participation in the protected activity; (3) the employer took adverse action against plaintiff; and (4) a causal connection existed between the plaintiff's protected activity and the adverse action taken by the employer." Raniola v. Bratton; 243 F.3d 610, 624 (2d Cir. 2001).

Mathis has failed to present any evidence which might satisfy the causal connection requirement. She has not produced any evidence demonstrating that any of the three suspensions or her removal were motivated by retaliation for protected activities. Mathis claims her September 1997 suspension was motivated by retaliation for her having filed a discrimination complaint more than twenty years earlier, a time period which is simply too remote to support any inference of retaliatory motive. Her only other evidence in support of a retaliatory motive is that at some unspecified time, she alleges that Coles told her that "he wouldn't go against management" and that this statement somehow shows the retaliatory nature of the four disciplinary actions for which Coles was the deciding official. However, Mathis' suspicion that this statement implies retaliatory animus, without any other support, is not enough to support a prima facie claim of retaliation.

Summary judgment is therefore granted in favor of the defendants as to the plaintiff's retaliation claim.

### IV. Conclusion

The defendant's motion for summary judgment [Dkt. # 101] is GRANTED. The Clerk is

ordered to close this case.[13]

SO ORDERED this  19th  day of September 2008, at Hartford, Connecticut.


/s/
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

---

[13] The Court's decision granting summary judgment pertains to matters raised in both the 2003 case, Civ. No. 3:03 CV 771 (CFD), and the 2004 case, Civ. No. 3:04 CV 1487 (CFD), therefore resolving both cases.